UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 02-61534-CIV-MORENO/SIMONTON

R.K., et al.,

    Plaintiffs,

v.

SUSAN KANASKIE, et al.,

    Defendants.
_____/

## ORDER ON MOTIONS TO EXCLUDE EXPERT TESTIMONY
## FROM EXPERT WITNESS CHELEENE SCHEMBERA

Presently pending before this Court are the following motions in limine which challenge, *inter alia*, the admissibility of testimony from Plaintiff's expert witness Cheleene Schembera:[1] In Limine Motion of Susan Kanaskie, Katherine Kaufman and Sharon Woodroof to Exclude Expert Opinions To Be Offered By The Plaintiffs Either In Toto Or Partially And For The Court To Conduct A Hearing Pursuant To *Daubert v. Dow Pharmaceuticals*, 509 U.S. 579 (1993) To Determine The Admissibility Of The Proposed Expert Testimony (DE # 818); Defendants, Elaine Corsino's And Latena Preston's Motion To Exclude Expert Testimony Or, In The Alternative, For A *Daubert* Hearing (DE # 836); and Defendant Corrine Millikan's Motion in Limine to Exclude Testimony of Plaintiff's Expert Chelly Schembera (DE # 873). The Honorable Federico A. Moreno, United States District Judge, has referred this case to the undersigned Magistrate Judge to take all necessary and proper action as required by law (DE # 969). These motions are fully briefed (DE # 893 (Plaintiffs' Consolidated Response to DE ## 818, 836), incorporating

---

[1] A separate order is being entered to address those portions of the motions that challenge the admissibility of testimony from Plaintiff's other expert witnesses–Dr. Philip Boswell, Dr. Brainard Hines and Larry Forman.

exhibits filed in DE # 721; DE # 901 Plaintiffs' Response to DE # 873), incorporating by reference DE # 893); DE # 898 (Reply of Defendants Kaufman, Kanaskie and Woodroof); DE # 926 (Reply of Defendant Millikan); DE # 937 (Reply of Defendants Corsino and Preston)).  The record contains the sworn statement of Cheleene Schembera (DE # 721, Ex. 1); her *curriculum vitae* and expert report (DE # 721, Ex. 2); and her deposition (DE # 677).  An evidentiary hearing regarding all expert witnesses was held on May 8-9, 2007, and all four challenged expert witnesses testified at the hearing.  For the reasons stated below, the motions are granted in part and denied in part, with respect to the testimony of expert witness Cheleene Schembera.

I. <u>BACKGROUND</u>

At the time the above motions were filed, there were two Plaintiffs--R.K. and J.K.  At the commencement of the hearing on these motions, the parties announced that Plaintiff J.K. has settled his claim, and therefore the motions remain pending only as to Plaintiff R.K.  (DE # 1041, Notice of Settlement).  Plaintiff R.K. is proceeding under seven counts of the Third Amended Complaint, claiming that, while in foster care in the Calhoun home, Defendants deprived him of his fundamental right to physical safety and to be free from unnecessary harm, in violation of the Fourteenth Amendment to the United States Constitution (DE # 446).[2]  Plaintiff alleges that, as a result of Defendants' deliberate indifference concerning his safety and well-being, he was subjected to child on child sexual abuse.  Plaintiff seeks damages for the alleged deprivations pursuant to 42 U.S.C. § 1983.

Defendants have moved to exclude the testimony of four witnesses, all of whom

---

[2] A separate Count was brought by each of the two plaintiffs against each of the seven defendants, thus yielding the total of fourteen (14) Counts.

Plaintiffs contend are qualified to testify as experts. These witnesses are: Cheleene Schembera ("Schembera"), an Independent Social Services Consultant; Lawrence Forman ("Forman"), a Consultant/Board Member of the Children's Rehabilitation Network; Dr. Philip Boswell ("Dr. Boswell"), a Licensed Clinical Psychologist; and Dr. Brainard Hines ("Dr. Hines"), a Licensed Mental Health Counselor. This Order addresses the admissibility of the testimony of witness Schembera.

Plaintiff seeks to have Schembera testify as an expert witness as to the policies and procedures of the Department of Children and Families ("DCF"), and the standard of care with respect to foster children. In addition to explaining the policies and procedures of DCF, Plaintiff seeks to elicit from Schembera a summary of the roles of each Defendant within DCF and with respect to the Calhoun foster home and the children placed there, a summary of all the information in the record regarding the actions taken by each Defendant, the knowledge that each Defendant had, the opinion that the actions of each Defendant did not meet various standards of care, and the opinion that each Defendant knew that R.K. was at serious risk of harm, did nothing to protect him from further sexual assaults in the Calhoun foster home, and that this failure to act resulted in further sexual abuse to R.K.

II. **FRAMEWORK FOR LEGAL ANALYSIS**

The admissibility of expert witness testimony is governed by Federal Rule of Evidence 702 ("Rule 702"), which provides, in pertinent part:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods,

and (3) the witness has applied the principles and methods
reliably to the facts of the case.

Rule 702 was amended to its current form in 2000, to conform to the requirements established by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999).  As explained in the Advisory Committee Notes to the 2000 Amendments:

> *Daubert* set forth a non-exclusive checklist for trial courts to use in assessing the reliability of scientific expert testimony.  The specific factors explicated by the *Daubert* Court are (1) whether the expert's technique or theory can be or has been tested–that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community.  The Court in *Kumho* held that these factors might also be applicable in assessing the reliability of non-scientific expert testimony, depending upon "the particular circumstances of the particular case at issue." 119 S. Ct. at 1175.
>
> No attempt has been made to "codify" these specific factors.  *Daubert* itself emphasized that the factors were neither exclusive nor dispositive.  Other cases have recognized that not all of the specific *Daubert* factors can apply to every type of expert testimony.

The *Daubert* inquiry does not require consideration of whether the expert's testimony is correct, but only whether the testimony is reliable and should be considered by the jury.  *See, e.g.*, *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292-93 (11th Cir. 2005).  Rule 702 standards are broad enough to require consideration of any or all of the specific *Daubert* factors where appropriate.  As recognized in the Advisory Committee Notes to the 2000 Amendments:  "Some types of expert testimony will be

4

more objectively verifiable, and subject to the expectations of falsifiability, peer review, and publication, than others.  Some types of expert testimony will not rely on anything like a scientific method, and so will have to be evaluated by reference to other standard principles attendant to the particular area of expertise."

Rule 702 is also broad enough to permit the admission of expert testimony regarding general principles of a particular field, where those principles will assist the trier of fact.  As stated in the Advisory Committee Notes to the 2000 Amendments:

> [I]t might also be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case....  The amendment does not alter the venerable practice of using expert testimony to educate the factfinder on general principles.  For this kind of generalized testimony, Rule 702 simply requires that: (1) the expert be qualified; (2) the testimony address a subject matter on which the factfinder can be assisted by an expert; (3) the testimony be reliable; and (4) the testimony "fit" the facts of the case.

The Advisory Committee Notes to the 2000 Amendment also make clear that "experience alone–or experience in conjunction with other knowledge, skill, training, or education" may be a sufficient basis for expert testimony and "Rule 702 expressly contemplates that an expert may be qualified on the basis of experience."  The notes go on to explain that in certain areas, experience is the primary, if not the only, basis for reliable expert testimony.  The *Kumho Tire* Court extended *Daubert* in holding that the criteria used to assess the reliability of a scientific opinion should be used to evaluate the reliability of all testimony, including that which is non-scientific or otherwise specialized.  *Id.* at 147.

In *United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004) (*en banc*), the Eleventh Circuit examined Rule 702, as amended in 2000, and set forth the following standards:

5

> [I]n determining the admissibility of expert testimony under Rule 702, we engage in a rigorous three-part inquiry. Trial courts must consider whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*Id*. at 1260.

The burden of establishing each of these three factors–qualification, reliability, and helpfulness–rests on the proponent of the expert testimony. *Id.* The *Frazier* court noted that because of "the powerful and potentially misleading effect of expert evidence, sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule 403." *Id*. at 1263.

In *Frazier,* the Eleventh Circuit upheld the District Court's decision to exclude the testimony of a forensic investigator. There, the investigator was prepared to testify that forensic evidence did not show the presence of defendant's hair or fluids on the victim or in her car, and that with the amount of sexual activity claimed by the victim, it would be expected that some transfer of hairs or seminal fluid would occur. Thus, his professional opinion was that forensic evidence did not substantiate the victim's rape claim. The District Court excluded his opinion on the grounds that no scientific study established the percentage of cases in which hair or bodily fluid had been found where there were similar rape allegations, and that his opinion therefore was not grounded in a scientific basis. However, the District Court permitted the investigator to testify concerning the standard procedures employed in investigating the crime scene of an alleged rape, that no hair or fluid matching the defendant was found on the scene, and

6

that the most commonly found forensic evidence during the analysis of a rape investigation was the transfer of hairs.

An Eleventh Circuit panel initially reversed the conviction, holding that the District Court abused its discretion in excluding this evidence because the "decision to exclude [the] testimony is based on an incomplete understanding of the background required of an expert witness." *Id.* at 1266. However, the Court, sitting *en banc*, reversed the panel decision, holding that although the witness was qualified as a forensic investigations expert, he had not offered a reliable foundation to support his opinion that if a rape had occurred, it was more likely than not that hair or seminal fluid would be transferred. The Court emphasized that since the expert relied "solely or primarily on his experience, it remained the burden of the proponent of this testimony to explain how that experience led to the conclusion he reached, why that experience was a sufficient basis for the opinion, and just how that experience was reliably applied to the facts of the case." *Id.* at 1265. As stated by the Eleventh Circuit, "If admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong." *Id.* at 1261. The Court also held that the District Court had properly determined that the expert's opinion would not aid the jury, since it was imprecise and unspecific. *Id.* at 1266.

The use of an expert witness in cases similar to the case at bar was examined by the Eleventh Circuit in *Omar v. Babcock*, 177 Fed. Appx. 59, 2006 WL 436030 (11th Cir. 2006), affirming the District Court's opinion in Case No. 02-1063-CIV-KRS (M.D. Fla. DE # 115 8/27/04); and *Maldonado v. Snead*, 168 Fed. Appx. 373, 2006 WL 1004858 (11th Cir. 2006). Although these unpublished opinions are not binding precedent, the undersigned is persuaded by the methodology used in those cases, and thus an examination of those

7

decisions is useful in the case at bar.

In *Maldonado*, a former foster child brought a civil rights action against employees of DCF, alleging deliberate indifference to his constitutional right to physical safety in foster care. In opposing summary judgment, Maldonado sought to use the affidavit of expert witness Mary Allegretti, who claimed to be an expert in Florida's child welfare system, and who had reviewed several thousand pages of records produced by DCF regarding Maldonado to support her conclusions that "information within the DCAF file gave rise to knowledge on the part of Department personnel." *Id.* at 12. The Eleventh Circuit held that the District Court had not abused its discretion in striking this Affidavit, since it contained only "legal conclusions, conclusory statements of fact [ ], misstatements of fact [ ], facts which have already been found by this Court to be irrelevant ... and facts which would be inadmissible at trial." *Id*. at 12.

In *Omar*, an adoptee brought a civil rights action against employees of DCF, alleging that they were deliberately indifferent to the abuse he suffered in the home of his adoptive mother. In opposing summary judgment, he sought to use the affidavit of expert witness Linda Radigan, a former DCF official who had worked in various positions. The Eleventh Circuit affirmed the decision of the District Court which struck those portions of her affidavit which stated legal conclusions as to the defendants' state of mind, such as "the defendants consciously disregarded known signs of abuse," and absence of the required planning ... demonstrates reckless disregard." 2006 WL 1004858 at 5. An examination of the District Court's opinion reflects that the Court found that Ms. Radigan was "qualified as an expert witness to testify regarding the statutes, rules, regulations, policies and procedures pertinent to Florida's foster care system and the various job duties of foster system personnel of the Florida Department of Children and

Families;" but "not qualified as an expert on the state of mind of others, nor was this testimony necessary for the jury to understand the facts of the case or to determine the ultimate question, whether the defendants acted with deliberate indifference."  Thus, Ms. Radigan was permitted to state what the policies, procedures, rules and regulations of DCF were, and which were not followed; but was not permitted to opine on whether the Defendants had actual knowledge of specific incidents of abuse, or deliberately disregarded evidence of abuse and the foreseeable risk of substantial harm; and was not permitted to testify regarding whether the defendants acted with deliberate indifference and whether Omar suffered harm as a result of the defendants' actions. (Case No. 02-01063-KRS, DE 115 at 45-48).

### III. EXPERT WITNESS  CHELEENE SCHEMBERA

Schembera is an independent social services consultant.  Plaintiff retained her to render expert opinions regarding the professional standards of care applicable to Defendants at all relevant times, and the efficacy and propriety of Defendants' actions in view of their employment duties and responsibilities (DE # 893, p. 2).  In her Expert Report (DE # 893, Ex. 2), Schembera lists all the documents upon which her report is based, followed by a brief case synopsis and detailed overview of chronological events.  Her report includes seven individual reports, one for each Defendant.  In each report, she outlines the Defendant's employment role, background experience, and job responsibilities based primarily upon her review of their personnel files, and her personal knowledge of the management system of Florida's Department of Children and Family Services (Schembera Sworn Statement ¶ 13).  Each report also lists the applicable standards of care, findings and conclusions as to each Defendant gleaned from Schembera's own personal knowledge and her review of case files, depositions,

and various other documented sources (Schembera 4/27/05 Depo pp. 50-51, 81; Schembera Sworn Statement ¶¶ 11-15). Her professional opinion is that all seven Defendants fell below the applicable standards of care.

In their motion, Defendants Kanaskie, Kaufman and Woodroof argue Schembera's testimony is "pure speculation," based on flawed methodology, assumptions and her own theories and not the data in the record (DE # 818, pp. 8, 9, 10, 11). These Defendants argue also that Schembera lacks specific expertise to render an opinion about each individual Defendant's work performance because she never worked in their respective positions (DE # 818, p. 8). Instead, they argue, she is being offered as a "jack of all trades" who offers nothing more than general job descriptions without the ability to pinpoint specific duties for which Defendants were responsible on a daily basis (DE # 818, p. 9). Moreover, these Defendants argue that her testimony would not be useful to a jury because it concerns general matters that require no expertise given the facts in the record (DE # 818, p. 9).

In their motion, Defendants Corsino and Preston seek to exclude Schembera's testimony on the grounds that she lacks specialized knowledge about investigations of alleged abuse or neglect of foster children (DE # 836, p. 9). They also emphasize that she has never before testified or been qualified as an expert witness (DE # 836, p. 9). These Defendants argue that her conclusions are unreliable, unhelpful, and "mere statements of fact and or conclusions of law which do not require expertise" (DE # 836, pp. 10, 12). They further note that several of Schembera's statements stem from her own determinations despite the testimony of others to the contrary (DE #836, p. 13).

In her motion, Defendant Millikan argues that Ms. Schembera's testimony should be excluded since she is not qualified to give expert opinion testimony, the methodology

10

by which she reached her opinion is not reliable, and her testimony will not assist the jury (DE # 873, p. 1). Defendant Millikan specifically challenges Schembera's opinions regarding Millikan's knowledge of various matters, arguing that Schembera's opinions of what Millikan knew based on Schembera's reviews of the records will not assist the jury since the jury is equally capable of reaching its own conclusions based on its review of the evidence.

At the evidentiary hearing, the defendants conceded that Schembera was qualified as an expert with respect to the general structure, policies and procedures of DCF.

In opposition to the above motions, Plaintiff argues that Schembera's lack of prior expert witness experience is not dispositive of her ability to qualify as an expert in this matter (DE # 893, pp. 7-8). Plaintiff contends that Schembera is qualified as an expert by virtue of her educational background and extensive experience in child welfare (DE # 893, p. 4). Plaintiff argues that she adequately outlined her standard of care audit methodology, and that DCF routinely uses such process to conduct quality assurance reviews to evaluate employee performance (DE # 893, pp. 9, 10, 14). In response to Defendants' assertion that Schembera's opinions run contrary to the testimony of others, Plaintiff cites statements by others in support of Schembera's conclusions (DE # 893, pp. 11, 12). Plaintiff asserts that the law permits an expert to base her opinion on a particular version of disputed facts and that a jury shall decide what weight to assign to her opinion (DE #893, p. 13). Lastly, Plaintiff points out that Schembera's testimony helps explain and clarify specific administrative procedures and professional expectations, especially "in light of the confusing and sometimes conflicting testimony of the Defendants and other fact witnesses" (DE # 893, pp. 14, 15).

i. <u>Qualifications</u>

Schembera has extensive experience in the field of child welfare, and, in particular, Florida's foster care system.  Schembera graduated from Florida State University ("FSU") in 1965, with a Bachelor of Arts degree in Art History and English (Schembera 4/27/05 Depo p. 24).  She then obtained a Master's Degree in Social Work from FSU in 1970, and thereafter was employed by DCF in various capacities (Schembera 4/27/05 Depo p. 24).  She began as a mental health unit supervisor for a short time before transitioning to the job of child welfare casework supervisor for investigations, foster care and adoptions (Schembera 4/27/05 Depo pp. 26-27).  She then served as the Statewide Manager of Florida's Foster Care Program for two years starting in 1972 (Schembera 4/27/05 Depo p. 27).  In that position, she reviewed and approved every foster home licensed in Florida at the time, assisted with DCF policy development, and reviewed foster home re-licensing studies (Schembera 4/27/05 Depo pp. 27-28).

In 1975, Schembera became an Operations and Management Consultant charged with implementing DCF's new management matrix structure and reorganization (Schembera 4/27/05 Depo p. 28).  She later became the Deputy District Administrator of District 2, where she was second in the chain of command responsible for overseeing institutions and programs in fourteen counties, including juvenile delinquency, child welfare, and a Public Assistance Program (Schembera 4/27/05 Depo pp. 32-33).  She then became the District Administrator of District 1, a smaller four-county area with the same programs as those in District 2 and one mental health institution (Schembera 4/27/05 Depo p. 34).  In District 1, Schembera's duties paralleled those she had in District 2 plus she also served on many department task forces and strategic planning forums (Schembera 4/27/05 Depo pp. 34-35).

She left District 1 in 1984 to attend a three-month Senior Executive Fellows Program at Harvard University, for which she obtained a Certificate of Completion (Schembera 4/27/05 Depo pp. 24, 35). Upon her return to Florida, she became the Inspector General for a short period, and her duties included internal audits, evaluations, investigations, and collaborative work with a law enforcement officer to train investigation and evaluation specialists (Schembera 4/27/05 Depo pp. 35-36). She later returned to her position as District 1 Administrator (Schembera 4/27/05 Depo p. 38).

DCF retained Schembera as an independent consultant on child welfare matters in 1999, a position she has held through the present (Schembera 4/27/05 Depo p. 11; Schembera Sworn Statement ¶ 2). In this position, she consulted with District 7 as part of a Chid Safety Strike Force and managed the review of thousands of family safety case files to determine DCF's level of compliance with specific standards (Schembera Sworn Statement ¶ 4). She also consulted with District 10 concerning the implementation of exit criteria as part of the *Ward* class action settlement agreement (Schembera 4/27/05 Depo p. 13). She routinely manages quality assurance reviews using routine DCF standard of care audits to evaluate DCF employee or program performance (Schembera Sworn Statement ¶ 4). Schembera also served as Interim District Administrator for District 11 and Interim Executive Director for CHARLEE Homes for Children for short periods of time in 2002 and 2003, respectively (Schembera 4/27/05 Depo pp. 21-22).

To date, Schembera has never been qualified to testify as an expert witness (Schembera 4/27/05 Depo p. 48). However, the undersigned finds that she is sufficiently qualified under Rule 702 to testify as an expert witness in this matter. Although scientific training or education provide potential grounds to qualify an expert, another path to expert status may be experience in the field. *Frazier,* 387 F.3d at 1260-61; *see*

*also Kumho Tire*, 526 U.S. at 147.  Clearly, her many years of experience working under the auspices of DCF in several roles, including upper level supervisory positions, combined with her educational background, DCF management experience, familiarity with DCF procedures, and high level involvement in foster home licensing, provide a sufficient foundation for expert qualification based on experience.

Her alleged inability to pinpoint specific employment duties of each Defendant or her lack of employment in each of the Defendant's respective positions is not a sufficient ground to disqualify her as an expert.  Her conclusions are drawn from her extensive experience supervising others in these positions, and are thus admissible.  *Kumho Tire*, 526 U.S. at 156 (holding it undeniable "that an expert might draw a conclusion from a set of observations based on extensive and specialized experience").

    ii. <u>Methodology/Reliability</u>

Although the observation that Schembera is qualified as an expert by experience bears on the reliability of her proffered testimony, experience alone does not necessarily render reliable any conceivable opinion she has.  *Frazier*, 387 F.3d at 1261 (holding that the "reliability criterion remains a discrete, independent, and important requirement for admissibility").  Thus, the next step is to determine if Schembera's methodology is reliable.  To admit expert testimony, a trial court must assess whether the methodology underlying the proposed testimony is valid and properly applied to facts in issue. *Frazier*, 387 F.3d at 1261 (citing *Daubert*, 509 U.S. at 592-93).  Non-scientific, experience-based testimony, like Schembera's, will be admissible only if it is "properly grounded, well reasoned, and not speculative." *U.S. v. Masferrer*, 367 F. Supp. 2d 1365, 1373 (S.D. Fla. 2005) (quoting Fed. R. Evid. 702 Advisory Committee Notes (2000 amends.)).  An expert's testimony need only be found to rest on "good grounds" to be admissible.

*Quiet Tech. DC-8, Inc. v. Hurel-Dubois, U.K. Ltd.*, 326 F.3d 1333, 1345 (11th Cir. 2002). Once an expert's methodology is deemed valid, it is up to the adversarial vehicles of cross-examination and competing expert testimony to test any alleged flaws in the expert's results. *Id.*

Schembera's proposed testimony will not be solely the product of her own theories and inferences, as Defendants suggest. In her report and deposition, Schembera detailed the method by which she formulated her opinions. In particular, she reviewed thousands of pertinent documents given to her in the form of a Summation computer database (Schembera 4/27/05 Depo p. 100; Schembera 6/9/05 Depo p. 301). In accordance with DCF standard of care audit methodology, she reviewed Florida statutes, Florida's Administrative Code, DCF operating procedures, social work standards for DCF child welfare practitioners, DCF personnel records, foster care files of each child in the Calhoun home, investigation files, licensing files, case notes, individual statements and depositions (Schembera 4/27/05 Depo pp. 50-51, 60, 80; Schembera 6/9/05 Depo pp. 323-324; Schembera Sworn Statement ¶¶ 8, 11-16). She then re-reviewed the entire set of records with a specific focus on each of the Defendants and Plaintiffs (Schembera Sworn Statement ¶ 15). This method was in keeping with her previous DCF standard of care audits in which she evaluated DCF employee performance and compliance with applicable rules and regulations (Schembera Sworn Statement ¶¶ 3, 7).

After a careful review of the record, the undersigned concludes that the standard of care audit methodology used by Schembera is reliable. Such audits entail a formal process routinely used by DCF. Thus, her testimony, including testimony about DCF standards that apply in case of allegations of child abuse or neglect in a foster home, is based on sound methodology.

**Defendants point to testimony contrary to Schembera's statements in an effort to undermine her methodology.  However, the only relevant inquiry at this juncture in the proceedings relates to the validity of her methodological approach.  Indeed, Defendants do not argue that it was improper for Schembera to have utilized DCF's standard of care audit methodology.  Instead, they point out alleged inaccuracies in her results.  Such inaccuracies go to the weight, not admissibility, of Schembera's testimony and, it is "precisely the role of cross-examination" to address such alleged inaccuracies.  *Quiet Tech. DC-8, Inc.*, 326 F.3d at 1345.**

      **iii.  <u>Usefulness to the Jury</u>**

**Schembera's familiarity with DCF policies and procedures, together with her extensive educational and employment experience in child welfare matters, make her a valuable resource.  Additionally, her synthesis and subsequent analysis of numerous documents, including case files, depositions, policies, statues, regulations and procedures is helpful.  On several occasions during her deposition, Schembera helped clarify or explain matters that could potentially cause confusion and misunderstanding.  Her testimony serves to clarify foster home licensing requirements, criteria for obtaining waivers of licensed foster home capacity limits, DCF rules and regulations, internal DCF reporting systems, foster care placements and the appropriate procedures to be followed in the case of sexual abuse allegations made while a child is in foster care.**

**In light of the complex data and information that is relevant in this matter, Schembera's testimony assists the jury to fully understand the "facts in issue."  For instance, at one point in her deposition, Schembera explained the process for securing an approval for a foster child's placement in a residential treatment program (Schembera 4/27/05 Depo p. 119).  She also offers aid in understanding the purpose of an**

overcapacity waiver and factors to consider when a DCF Program Specialist faces a request for such waiver (Schembera 4/28/05 Depo pp. 9-10, 51, 67-68). Also helpful is her knowledge about alternative options available when making a licensing decision, which is useful for an individual who is wholly unfamiliar with the DCF licensing scheme (Schembera 6/9/05 Depo pp. 9-10). Such information will be critical to the fact-finder's determination of key issues in this matter, such as the propriety of each individual Defendant's actions in light of the circumstances that existed at the time. In addition, her testimony concerning the applicable professional standards, and whether they were followed is useful since the records are replete with abbreviations, acronymns and unfamiliar terminology. Although the failure to comply with professional standards is not by itself sufficient to support a finding of deliberate indifference, it is relevant to the inquiry.

However, expert testimony is admissible only to the extent it concerns matters that are beyond the understanding and experience of the average citizen. *Frazier*, 387 F.3d at 1262; *See also* Fed. R. Evid. 702 (expert testimony must "assist the trier of fact to understand the evidence or to determine a fact in issue"). Furthermore, neither *Daubert* nor the Federal Rules of Evidence require a court to admit proffered opinions that are "connected to existing data only by the *ipse dixit* of the expert." *Michigan Millers Mut. Ins. Corp. v. Benfield*, 140 F.3d 915, 921 (11th Cir. 1998) (quoting *General Electric Co. v. Joiner*, 552 U.S. 136, 146 (1997)). Therefore, a trial judge may find that there is too much of an analytical gap between the data and the proffered opinion and may exclude any expert testimony that is "imprecise and unspecific" or whose factual basis is not sufficiently explained. *Joiner*, 552 U.S. at 146; *Frazier*, 387 F.3d at 1266.

In light of the analysis above, there are certain matters as to which Schembera's

17

opinion is not useful. Several times in her report and deposition, she expressed an opinion based on what she viewed as being a "reasonable" conclusion or inference under the circumstances (Schembera report; Schembera 4/27/05 Depo pp. 90, 92; Schembera 4/28/05 Depo pp. 35, 92, 93, 133; Schembera 6/9/05 Depo pp. 25, 207, 242). For instance, Schembera's opinion that Defendant Worsley called an emergency hearing based on a concern about what might be going on in the Calhoun home was based on what Schembera found "reasonable to conclude" rather than on any official documented concerns. However, this determination can and should be made by the trier of fact based on Defendant Worsley's testimony and documents in the record (Schembera 4/27/05 Depo pp. 140-141). Also, Schembera's opinion that sufficient concern existed to restrict the licensing capacity in the Calhoun home improperly usurps the fact-finder's function of determining whether such concern truly existed, especially in view of the ambiguous evidence on this important issue (Schembera 4/28/05 Depo p. 35). Most significantly, her opinion regarding the state of mind of each of the defendants and their specific knowledge, whether each defendant was deliberately indifferent to the needs of R.K., and whether, "as a result, R.K. was subjected to continued child-on-child sexual abuse in this home," are matters that the jury does not need expert assistance to determine. These conclusions or inferences are more appropriately left to the trier of fact's judgment.

     In sum, after reviewing the pleadings, report, resume, and depositions relating to Schembera, the undersigned concludes that Schembera qualifies as an expert in accordance with Rule 702. Nonetheless, her testimony is sufficiently reliable and useful only in certain areas. Thus, Schembera's testimony will be limited to: 1) the roles & responsibilities of DCF employees as detailed in their respective job descriptions; 2) the

professional standards of care applicable to the individual Defendants in this matter;  3) the standard procedures employed in investigating abuse or neglect allegations involving children in foster homes; and 4) whether those standards were followed in the present case.  She is permitted to testify regarding any admissible evidence she used in making these determinations in order to explain her opinions.[3]

Schembera will not be permitted to testify concerning the state of mind of each defendant, or opine on whether that defendant was deliberately indifferent to the needs of R.K., which caused him to suffer additional child abuse.  These are matters which the jury is fully capable of determining without the assistance of expert testimony.

Therefore, based on a review of the record as a whole, and for the reasons stated above, it is hereby

**ORDERED AND ADJUDGED** that Defendants' motions are **GRANTED, IN PART, AND DENIED, IN PART**, as set forth in the body of this Order.

**DONE AND ORDERED** in chambers at Miami, Florida, on July 9, 2007.

_____
ANDREA M. SIMONTON
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
The Honorable Federico A. Moreno,
    United States District Judge
All counsel of record

---

[3]  The parties have indicated that they are in the process of stipulating to evidence reflected in the voluminous records in this case; the stipulation may affect the amount of testimony needed from Schembera with respect to the entries in these records, and whether the District Court excludes certain testimony as cumulative.