**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 02-61534-CIV-MORENO/SIMONTON**

**R.K., et al.,**

**Plaintiffs,**

**v.**

**SUSAN KANASKIE, et al.,**

**Defendants.**
**_______________________________/**

**ORDER ON MOTIONS TO EXCLUDE EXPERT TESTIMONY**

**Presently pending before this Court are the following motions in limine which challenge, *inter alia*, the admissibility of testimony from Plaintiff's expert witnesses witnesses–Dr. Philip Boswell, Dr. Brainard Hines and Larry Forman[1]: In Limine Motion of Susan Kanaskie, Katherine Kaufman and Sharon Woodroof to Exclude Expert Opinions To Be Offered By The Plaintiffs Either In Toto Or Partially And For The Court To Conduct A Hearing Pursuant To *Daubert v. Dow Pharmaceuticals*, 509 U.S. 579 (1993) To Determine The Admissibility Of The Proposed Expert Testimony (DE # 818); and Defendants, Elaine Corsino's And Latena Preston's Motion To Exclude Expert Testimony Or, In The Alternative, For A *Daubert* Hearing (DE # 836). The Honorable Federico A. Moreno, United States District Judge, has referred this case to the undersigned Magistrate Judge to take all necessary and proper action as required by law (DE # 969). These motions are fully briefed (DE # 893 (Plaintiffs' Consolidated Response to DE ## 818, 836), incorporating exhibits filed in DE # 721; DE # 898 (Reply of Defendants**

**[1] A separate order has been entered to address those portions of the motions that challenge the admissibility of testimony from Plaintiff's other expert Cheleene Schembera.**

**Kaufman, Kanaskie and Woodroof); DE # 937 (Reply of Defendants Corsino and Preston)). The record contains the *curriculum vitae* of Dr. Boswell (DE # 721, Ex. 3); Dr. Boswell's deposition (DE # 677); the *curriculum vitae* of Dr. Hines, (DE # 721, Ex. 4), the deposition of Dr. Hines (DE # 677); the combined expert report of Dr. Boswell and Dr. Hines (DE # 721, Ex. 5); the Professional Resume of Mr. Forman (DE # 721, Ex. 7); the expert report of Mr. Forman (DE #721, Ex. 8); and the deposition of Mr. Forman (DE # 677). An evidentiary hearing regarding all expert witnesses was held on May 8-9, 2007, and all challenged expert witnesses testified at the hearing. For the reasons stated below, the motions are denied with respect to the testimony of expert witnesses Dr. Boswell, Dr. Hines and Mr. Forman.**

## I. BACKGROUND

**At the time the above motions were filed, there were two Plaintiffs--R.K. and J.K. At the commencement of the hearing on these motions, the parties announced that Plaintiff J.K. has settled his claim, and therefore the motions remain pending only as to Plaintiff R.K. (DE # 1041, Notice of Settlement). Plaintiff R.K. is proceeding under seven counts of the Third Amended Complaint, claiming that, while in foster care in the Calhoun home, Defendants deprived him of his fundamental right to physical safety and to be free from unnecessary harm, in violation of the Fourteenth Amendment to the United States Constitution (DE # 446).[2] Plaintiff alleges that, as a result of Defendants' deliberate indifference concerning his safety and well-being, he was subjected to child on child sexual abuse. Plaintiff seeks damages for the alleged deprivations pursuant to 42 U.S.C. § 1983.**

---

**[2] A separate Count was brought by each of the two plaintiffs against each of the seven defendants, thus yielding the total of fourteen (14) Counts.**

**Defendants have moved to exclude the testimony of four witnesses, all of whom Plaintiff contends are qualified to testify as experts. These witnesses are: Cheleene Schembera ("Schembera"), an Independent Social Services Consultant; Lawrence Forman ("Forman"), a Consultant/Board Member of the Children's Rehabilitation Network; Dr. Philip Boswell ("Dr. Boswell"), a Licensed Clinical Psychologist; and Dr. Brainard Hines ("Dr. Hines"), a Licensed Mental Health Counselor. This Order addresses the admissibility of the testimony of witnesses, Dr. Boswell, Dr. Hines, and Mr. Forman. Plaintiff intends to call Dr. Boswell and Dr. Hines to testify as to Plaintiff's current level of functioning, the level of risk for future sexually aggressive behavior together with the risk of future revictimization, and the long-term psychological impact resulting from the repeated exposure to incidents of child on child sexual abuse (DE # 893, p.2). Dr. Boswell consulted Dr. Hines to prepare a joint report because Dr. Hines has specialized expertise about sexual offenders and abuse victims. Plaintiff seeks to have Forman testify as a life skills expert regarding the Continuum of Care and associated costs required to support Plaintiff's future long-term needs.**

**Defendants claim that, pursuant to Federal Rule of Evidence 702, the factual basis and methodology used for the proposed testimony is unreliable and unhelpful, in contravention of the requirements set forth in *Daubert*. Specifically, Defendants argue that the methodology employed by each of the proffered experts is not well reasoned and speculative at best, and is based on unreliable facts. They further argue that their testimony would tend to mislead and confuse the trier of fact, rather than being of assistance as required by *Daubert*. Defendants also argue that the proffered testimony fails to offer anything beyond the understanding and experience of the average lay person.**

**Plaintiff responds that each proposed expert's education, employment history and professional expertise provides sufficient evidence of their ability to render opinions as fully qualified experts. Plaintiff argues that each proposed expert sufficiently outlined and explained the methodology he utilized in reaching their ultimate conclusions. Also, Plaintiff contends that the proposed expert testimony would serve to explain and clarify issues, especially in light of the complex circumstances involved in the instant case that are beyond the understanding of a lay juror.**

## II. FRAMEWORK FOR LEGAL ANALYSIS

**The admissibility of expert witness testimony is governed by Federal Rule of Evidence 702 ("Rule 702"), which provides, in pertinent part:**

> **If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.**

**Rule 702 was amended to its current form in 2000, to conform to the requirements established by the United States Supreme Court in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999). As explained in the Advisory Committee Notes to the 2000 Amendments:**

> ***Daubert* set forth a non-exclusive checklist for trial courts to use in assessing the reliability of scientific expert testimony. The specific factors explicated by the *Daubert* Court are (1) whether the expert's technique or theory can be or has been tested–that is, whether the expert's theory can be challenged in some objective sense, or whether it is instead simply a subjective, conclusory approach that cannot reasonably be assessed for reliability; (2) whether the technique or theory has been subject to peer review and publication; (3) the**

> **known or potential rate of error of the technique or theory when applied; (4) the existence and maintenance of standards and controls; and (5) whether the technique or theory has been generally accepted in the scientific community. The Court in *Kumho* held that these factors might also be applicable in assessing the reliability of non-scientific expert testimony, depending upon "the particular circumstances of the particular case at issue." 119 S. Ct. at 1175.**
>
> **No attempt has been made to "codify" these specific factors. *Daubert* itself emphasized that the factors were neither exclusive nor dispositive. Other cases have recognized that not all of the specific *Daubert* factors can apply to every type of expert testimony.**

**The *Daubert* inquiry does not require consideration of whether the expert's testimony is correct, but only whether the testimony is reliable and should be considered by the jury. *See, e.g.*, *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1292-93 (11th Cir. 2005). Rule 702 standards are broad enough to require consideration of any or all of the specific *Daubert* factors where appropriate. As recognized in the Advisory Committee Notes to the 2000 Amendments: "Some types of expert testimony will be more objectively verifiable, and subject to the expectations of falsifiability, peer review, and publication, than others. Some types of expert testimony will not rely on anything like a scientific method, and so will have to be evaluated by reference to other standard principles attendant to the particular area of expertise."**

**Rule 702 is also broad enough to permit the admission of expert testimony regarding general principles of a particular field, where those principles will assist the trier of fact. As stated in the Advisory Committee Notes to the 2000 Amendments:**

> **[I]t might also be important in some cases for an expert to educate the factfinder about general principles, without ever attempting to apply these principles to the specific facts of the case.... The amendment does not alter the venerable practice of using expert testimony to educate the factfinder**

> **on general principles. For this kind of generalized testimony, Rule 702 simply requires that: (1) the expert be qualified; (2) the testimony address a subject matter on which the factfinder can be assisted by an expert; (3) the testimony be reliable; and (4) the testimony "fit" the facts of the case.**

**The Advisory Committee Notes to the 2000 Amendment also make clear that "experience alone–or experience in conjunction with other knowledge, skill, training, or education" may be a sufficient basis for expert testimony and "Rule 702 expressly contemplates that an expert may be qualified on the basis of experience." The notes go on to explain that in certain areas, experience is the primary, if not the only, basis for reliable expert testimony. The *Kumho Tire* Court extended *Daubert* in holding that the criteria used to assess the reliability of a scientific opinion should be used to evaluate the reliability of all testimony, including that which is non-scientific or otherwise specialized. *Id.* at 147.**

**In *United States v. Frazier*, 387 F.3d 1244 (11th Cir. 2004) (*en banc*), the Eleventh Circuit examined Rule 702, as amended in 2000, and set forth the following standards:**

> **[I]n determining the admissibility of expert testimony under Rule 702, we engage in a rigorous three-part inquiry. Trial courts must consider whether: (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.**

***Id.* at 1260.**

**The burden of establishing each of these three factors–qualification, reliability, and helpfulness–rests on the proponent of the expert testimony. *Id.* The *Frazier* court noted that because of "the powerful and potentially misleading effect of expert evidence,**

**sometimes expert opinions that otherwise meet the admissibility requirements may still be excluded by applying Rule 403." *Id.* at 1263.**

**In *Frazier*, the Eleventh Circuit upheld the District Court's decision to exclude the testimony of a forensic investigator. There, the investigator was prepared to testify that forensic evidence did not show the presence of defendant's hair or fluids on the victim or in her car, and that with the amount of sexual activity claimed by the victim, it would be expected that some transfer of hairs or seminal fluid would occur. Thus, his professional opinion was that forensic evidence did not substantiate the victim's rape claim. The District Court excluded his opinion on the grounds that no scientific study established the percentage of cases in which hair or bodily fluid had been found where there were similar rape allegations, and that his opinion therefore was not grounded in a scientific basis. However, the District Court permitted the investigator to testify concerning the standard procedures employed in investigating the crime scene of an alleged rape, that no hair or fluid matching the defendant was found on the scene, and that the most commonly found forensic evidence during the analysis of a rape investigation was the transfer of hairs.**

**An Eleventh Circuit panel initially reversed the conviction, holding that the District Court abused its discretion in excluding this evidence because the "decision to exclude [the] testimony is based on an incomplete understanding of the background required of an expert witness." *Id.* at 1266. However, the Court, sitting *en banc*, reversed the panel decision, holding that although the witness was qualified as a forensic investigations expert, he had not offered a reliable foundation to support his opinion that if a rape had occurred, it was more likely than not that hair or seminal fluid would be transferred. The Court emphasized that since the expert relied "solely or primarily on his experience, it**

remained the burden of the proponent of this testimony to explain how that experience led to the conclusion he reached, why that experience was a sufficient basis for the opinion, and just how that experience was reliably applied to the facts of the case." *Id.* at 1265. As stated by the Eleventh Circuit, "If admissibility could be established merely by the *ipse dixit* of an admittedly qualified expert, the reliability prong would be, for all practical purposes, subsumed by the qualification prong." *Id.* at 1261. The Court also held that the District Court had properly determined that the expert's opinion would not aid the jury, since it was imprecise and unspecific. *Id.* at 1266.

The proposed testimony is examined below in the context of these principles.

## III. PLAINTIFF'S EXPERTS[3]

### A. Dr. Philip Boswell & Dr. Bernard Hines

Dr. Boswell is a licensed clinical psychologist. Dr. Hines is a licensed mental health counselor who specializes in working with children who have sexual behavioral problems. Dr. Boswell was retained for the purpose of evaluating the Plaintiff, and shortly thereafter he hired Dr. Hines to assist him and serve as a consultant based on Dr. Hines' specific knowledge and experience working with sex offenders and children with sexual behavior problems (Hines Depo p. 7). Both doctors worked together in evaluating Plaintiff R.K. during February of 2003, and collaboratively prepared a final report of their findings (Boswell Depo p. 26).

The report details the results of various screening assessments used to test Plaintiff's cognitive abilities in addition to more general assessments as to the risk that

[3] Since the testimony given at the evidentiary hearing has not been transcribed, the only citations in this Order refer to the depositions and reports which have been filed. However, the undersigned has also relied upon the testimony given at the evidentiary hearing.

**Plaintiff might become involved in sexually inappropriate or aggressive behavior in the future. The report also notes the emotional problems that Plaintiff had experienced before entering the Calhoun home, including opinions as to how the sexual activity at the Calhoun home may have contributed to these problems. The report concludes with recommendations for future treatment.**

**Defendants Kanaskie, Kaufman and Woodroof argue that each witness lacks specific expertise to render an opinion in this case, and point to the fact that Dr. Boswell felt the need to hire Dr. Hines because of his more extensive experience with children as perpetrators of sexual abuse (DE # 818, p. 12). They also argue that the doctors' opinions are speculative and not statistically validated or supported and thus any testimony regarding future problems related to alleged sexual abuse must be excluded (DE # 818, pp. 14-15).**

**Defendants Corsino and Preston argue that because Dr. Hines is not a licensed psychologist or psychiatrist and cannot perform psychological testing, he should not be qualified as an expert (DE # 836, p. 14). In the alternative, they argue that even if Dr. Hines and Dr. Boswell are deemed qualified experts, their opinions are unreliable and will not assist the trier of fact (DE # 836, p. 14). Defendants support this contention by noting that the doctors should have provided information about the manner in which they divided their work while compiling the joint report (DE # 836, p. 14).[4]**

---

**[4] With respect to J.K., Defendants also specifically challenged the doctors' use of the Juvenile Risk Assessment Tool ("J-RAT") because it is not scientifically tested or empirically validated and thus can not be used to accurately predict recidivism (DE # 836, pp. 15-16); and, also challenge the doctors' use of the term "complex trauma syndrome," as it appears in J.K.'s report (DE # 836, p. 17). They argue that this diagnosis is inappropriate since it is not an accepted part of the DSM IV and will only serve to confuse the jury. These challenges have become moot since J.K. has settled this action and neither the J-RAT nor the diagnosis of complex trauma syndrome was**

**Plaintiff's position is that Dr. Hines and Dr. Boswell are both qualified experts based on their training and years of experience (DE # 893, pp. 23-25). Plaintiff defends the methodology utilized by Dr. Hines and Dr. Boswell by pointing out that each doctor gave a detailed account of their individual roles and the procedures employed in their respective depositions (DE # 893, pp. 23-25). Plaintiff also contends that an expert's methodology need not yield precise results as to the potential for recidivism so long as his methods produce a "reasonable degree of psychological probability" (DE # 893, p. 28).**

**i. Qualifications**

**Dr. Boswell holds a Master's Degree in Clinical Psychology and a Ph.D. in Clinical Psychology, both from the University of Miami (DE # 893, Ex. 3). He has been a licensed clinical psychologist since 1980, and has been in private practice in Coral Gables, Florida since 1985 (Boswell Depo pp. 4-5). Dr. Boswell primarily performs individual psychotherapy for both children and adults (Boswell Depo p. 9). He has specialized experience conducting psycho-educational evaluations of children for the purpose of discovering learning disabilities, has done forensic work on several sexual abuse cases, and has previously testified in civil cases dealing with child custody and sexual abuse (Boswell Depo p. 9).**

**Defendants suggest that Dr. Boswell's decision to enlist Dr. Hines as a consultant casts doubt as to whether Dr. Boswell was qualified to evaluate Plaintiff. However, the depositions of both Dr. Boswell and Dr. Hines, as well as their testimony at the evidentiary hearing, clearly explain that the reason for Dr. Hines' involvement was his**

---

**used with respect to R.K.**

**experience working with children as sexual abuse perpetrators as well as victims (Boswell Depo p. 12; Hines Depo p. 7). Given that this case involves children both as victims *and* perpetrators, it was reasonable for Dr. Boswell to seek the assistance of a specialist with experience evaluating child perpetrators. Such decision in no way calls into question Dr. Boswell's own ability to perform a psychological evaluation of Plaintiff, taking into account the special expertise of another expert in a specialized area. In sum, Dr. Boswell is well qualified to testify as an expert in the field of child psychology.**

**Dr. Hines completed his Master of Science degree in Clinical Psychology from West Virginia University in 1969, and his Ph.D. in Educational Psychology from University of Florida in 1980 (DE # 893, Ex. 4). As a licensed mental health counselor, he spends the majority of his time consulting and providing therapeutic intervention for sex offenders (Hines Depo pp. 4-5). Dr. Hines designed a sex offender treatment program for two residential facilities that have approximately 190 beds and continues to serve as a consultant for these facilities (Hines Depo p. 5). Specifically, he supervises clinical staff, provides risk assessments, and insures the overall quality of the clinical programming (Hines Depo p. 5). Dr. Hines is also contracted by the Department of Juvenile Justice to provide assessments of juvenile sexual offenders (Hines Depo p. 5). In addition, Dr. Hines worked as a consultant with Kristi House as part of a grant to create a program for children with sexual behavior problems (Hines Depo p. 5). Dr. Hines also maintains a private practice where he treats and evaluates sex offenders and children with sexual behavior issues (Hines Depo p. 5). According to his resume, Dr. Hines has over thirty years of experience as a therapist, consultant and mental health professional focusing on diagnosis and treatment of sexual offenders and victims of sexual abuse. Therefore, based upon his education, training and experience, Dr. Hines is well qualified to testify**

**as an expert in the risk assessment and treatment planning with respect to victims of sexual abuse and sexual offenders.**

**ii. Methodology/Reliability**

**During their depositions and at the evidentiary hearing, Dr. Boswell and Dr. Hines testified extensively about the methodology they employed. Dr. Boswell took the lead on reviewing all of the Plaintiff's files, while Dr. Hines reviewed selected pieces of background information and previous evaluations (Hines Depo p. 23). Dr. Hines and Dr. Boswell were usually both present during the interviews of each Plaintiff (Hines Depo p. 8; Boswell Depo p. 27). Often, Dr. Hines would conduct the interview while Dr. Boswell would observe and take notes (Boswell Depo p. 27). Dr. Boswell made the decisions as to which tests to administer and administered the tests himself (Hines Depo p. 15; Boswell Depo p. 15). Foremost among these were various sub-tests from the Wechsler Adult Intelligence Scale that measure intellectual functioning, practical and social knowledge, and literacy (Boswell Depo p. 12). Although Dr. Boswell used only certain sub-tests, he testified credibly that he performed the limited number of tests since his goal was to validate the results of more complete testing which had already been performed by other psychologists, whose records he reviewed.**

**While Dr. Hines did not conduct any of the formal tests, he did conduct a structured psychosexual evaluation of Plaintiff, which he described in detail at the evidentiary hearing. The undersigned finds that the methodology and reliability of the evaluation is sufficient to meet the standards of Fed. R. Evid. 702. Dr. Hines forwarded his findings regarding R.K. to Dr. Boswell in a letter (Hines Depo p. 20).**

**Dr. Hines testified that there really are no recognized or standardized tests for predicting recidivism, or forecasting treatment for juvenile sex offenders and/or victims**

**(Hines Depo pp. 15-19, 129, 131). However, the unavailability of such tests does not invalidate the methodology used by Dr. Boswell and Dr. Hines. *Smith v. BMW N. Am., Inc.*, 308 F.3d 913, 920 (8th Cir. 2002) (holding that there is no requirement that an expert opinion be quantifiable); *Arnold v. Cargill*, 2006 U.S. Dist. LEXIS 41555 *22 (D. Minn. 2006) (holding that a sociologist's testimony was admissible despite his inability to gather certain data). Likewise, the doctors' inability to parse out specifically what portion of Plaintiff's existing symptoms resulted from time spent at the Calhoun home (Boswell Depo pp. 60, 83-86) does not disqualify them from testifying as experts. *See Smith*, 308 F.3d at 920 (holding that a physician's testimony was admissible despite his inability to quantify precisely the extent to which a failed air bag caused a neck injury).**

**Dr. Boswell and Dr. Hines consistently linked their procedures to published studies, research, and their own vast experience (Hines Depo pp. 79-80; Boswell Depo pp. 47, 87). The undersigned thus finds that the methodology employed by Dr. Boswell and Dr. Hines was appropriate given the circumstances of this case.**

**iii. Usefulness to the Jury**

**The inability of Dr. Boswell and Dr. Hines to precisely predict recidivism or determine what portion of Plaintiff's current condition is the result of time spent at the Calhoun home also presents a question as to whether the doctors' findings will assist the trier of fact. As Dr. Boswell noted throughout his deposition, it is often extremely difficult to determine the extent to which one particular trauma affected an overall condition where multiple traumatic experiences have occurred (Boswell Depo pp. 60, 83-86). However, it is precisely because of this difficulty that Dr. Boswell and Dr. Hines are essential in assisting a jury as it unravels this complex question. *United States v. Hall*, 93 F.3d 1337, 1343-45 (7th Cir. 1996) (noting that "expert testimony may be particularly**

**important when the facts suggest a person is suffering from a psychological disorder" and that "properly conducted social science research often shows that commonly held beliefs are in error"). While Dr. Boswell and Dr. Hines are not able to provide a neat numeric analysis, they have formulated opinions as to how Plaintiff's experiences at the Calhoun home may have impacted his current psyche based on their considerable experience and time spent with Plaintiff. In particular, Dr. Boswell testified during his deposition about the interplay between Plaintiff's existing neurological problems and the environment at the Calhoun home (Boswell Depo p. 130-33). Dr. Boswell concluded that while Plaintiff entered the Calhoun home with certain vulnerabilities and special needs, his problems were aggravated following his experiences there. Dr. Boswell was also able to formulate a professional opinion as to the existence of subtle coercion involved in the sexual activity at the Calhoun home that may be invisible to the untrained eye (Boswell Depo pp. 31, 38-39, 42, 44). Each of these observations could prove useful to a jury.**

**Finally, Defendants argue that even if the testimony of either Dr. Boswell or Dr. Hines was deemed admissible, to admit them both would violate Federal Rule of Evidence 403 in that such testimony would be cumulative and repetitious. The undersigned disagrees. Rule 403 does permit the exclusion of relevant evidence where its probative value is outweighed by concerns of "undue delay, waste of time or needless presentation of cumulative evidence." Fed. R. Evid. 403. However, "because Rule 403 requires the exclusion of relevant evidence, it is an extraordinary measure that should be used sparingly."** ***Campbell v. Keystone Aerial Surveys*****, 138 F.3d 996, 1004 (5th Cir. 1998) (quoting** ***United States v. Morris*****, 79 F.3d 409, 411 (5th Cir. 1996)). The mere fact that the doctors collaboratively evaluated the Plaintiff does not render cumulative their**

**individual testimony. To the contrary, the depositions and resumes indicate that each doctor formulated opinions about Plaintiff's condition based on his own distinct professional history, training, and experience. Moreover, each doctor performed different functions in the course of the evaluations. Dr. Boswell took the lead in the evaluation and selected and administered the tests, while Dr. Hines performed a structured pyschosexual evaluation and used a more narrowly focused expertise in child perpetrators of sexual abuse. Accordingly, the undersigned concludes that the testimony of each doctor will be useful to the jury.**

**Because both Dr. Hines and Dr. Boswell are qualified experts, who employed a reliable methodology, and will assist the trier of fact in understanding this case, the testimony of both of them is admissible.[5]**

**B. Lawrence Forman**

**Plaintiff seeks to rely on the testimony of Lawrence Forman as a "Life Care Expert" (DE # 893, p. 2). Defendants Kanaskie, Kaufman and Woodroof argue that Forman's opinions and reports are not related to the facts in the instant case or based on a sound methodology (DE # 818, pp. 16-19). They further argue that his opinions are highly speculative (DE # 818, pp. 16-19). Defendants Corsino and Preston argue that because Forman's opinions are based largely on the opinions of Dr. Boswell and Dr. Hines, which they argue are unreliable, Forman's opinions are also unreliable (DE # 836, pp. 19-20). Additionally, Defendants argue that Forman's opinions are unsupported by evidence or explanation (DE # 836, pp. 19-20). In opposition, Plaintiff contends that**

**[5] Of course, the trial judge may revisit this issue during the course of the trial if, in fact, Dr. Boswell's testimony covers the areas as to which Dr. Hines would testify in describing the basis for his opinions.**

Forman's opinions are based on 36 years of experience providing life care planning services, reviewing expert reports and evaluations of Plaintiff (DE # 893, pp. 36-37). Plaintiff relies on numerous cases where life skills experts have been permitted to testify (DE # 893, pp. 36-37).

Forman prepared a Continuum of Care report for R.K. which is comprised of charts that include a list of suggested services, the time span over which the services will be needed, a suggested frequency, and a cost associated with each line item. Some of the services Forman suggests are: psychiatric treatment, vocational assessment, hospitalization, laboratory tests, child care specialist/mentor/driver, respite care, guardianship attorney, IBM compatible computer, software, internet access, bulletin board and calendar, and leisure time/community activity programs.

i. Qualifications

Forman currently works as a medical case manager and rehabilitation counselor (Forman Depo p. 5). Forman has previously testified as an expert witness in *Wareing v. United States*, 943 F. Supp. 1504, 1510-17 (S.D. Fla. 1996)(Forman Depo pp. 7-8). Mr. Forman's resume and testimony reflect that he has extensive experience in preparing life care plans for persons suffering from a variety of physical and emotional impairments. At the evidentiary hearing, Defendants expressly agreed that Mr. Forman is qualified as an expert in the field of life care planning.[6] Their challenge to his testimony in the case at bar is based on their contention that his opinions are based on the flawed methodology of Dr. Boswell and Dr. Hines, and the contention that his opinions invade

---

[6] The undersigned notes that life care planners are frequently used as expert witnesses with respect to the future needs of plaintiffs. *See, e.g., Rivera v. Turabo Med. Ctr.*, 415 F.3d 162 (1st Cir. 2005); *Miksis v. Howard*, 106 F.3d 754 (7th Cir. 1997).

**the province of the jury. In addition, they challenge the inclusion in his report of items that Defendants contend are necessary as the result of R.K.'s pre-existing problems, including low intelligence, which were not affected by anything that happened in the Calhoun home.**

**ii. <u>Methodology/Reliability</u>**

**Mr. Forman prepared the life care plan for R.K. using the methodology established by the International Association of Rehabilitation Providers. The methodology is peer reviewed in the Journal of Life Care Planning, and is generally accepted in the community of life care planners. Mr. Forman provided detailed testimony regarding the general methodology used to prepare life care plans, as well as the specific methodology used and the opinions he formed with respect to R.K. In addition, he used a conservative and reliable approach to estimating the costs of the services he included within the life care plan.**

**The methodology used by Mr. Forman to prepare a life care plan involves following a series of steps which were explained at the evidentiary hearing. Mr. Forman first reviews the records pertaining the condition of the client such as records of treatment, evaluation and diagnosis; interviews the client and/or client's family; examines the treatment that has already been provided, and treatment which has been recommended, but not yet provided, and analyzes the benefits derived from the treatment; consults with appropriate experts in fields where he does not have expertise himself, such as psychologists or doctors; consults with treating or evaluating experts; consults with the physician desk reference if there are medications involved; consults with the reimbursement guidelines of the Social Security Administration to determine the costs of various components of the plan; prepares a draft plan which is shared with the**

**relevant persons such as doctors, therapists, and family members who may be able to provide insight concerning the draft recommendations; if there are differences of opinions among the experts, he arranges a conference call to resolve the differences; and, finally, makes any necessary modifications to the plans based these reviews.**

**Mr. Forman followed the above methodology with respect to R.K., and developed two models–one which contemplated that R.K. would overcome his need for a supportive living environment, and the other which contemplated that he would not overcome this need. Mr. Forman provided a detailed explanation of why he included each item in his summary report. The undersigned finds, based upon the evidence presently in this record, that a rational jury could find the existence of the facts relied upon by Mr. Forman; although the undersigned recognizes that Defendants challenge many of these facts, and dispute whether the needs identified by Mr. Forman are the result of pre-existing conditions or the events at the Calhoun home. These matters go to the weight which the jury will give his testimony, rather than its admissibility. *See Quiet Technology DC-8, Inc. v. Hurel-Dubois, U.K. Ltd.*, 326 F.3d 1333, 1345 (11th Cir. 2002); *Walker v. Gordon*, 46 Fed. Appx. 691, 696 (3d Cir. 2002).**

**Mr. Forman further explained that if his report indicates that a certain part of the plan states that the service is to be provided "as needed" or "if needed," he did not include the cost for that service in his summary of costs. He acknowledged that due to the passage of time since the evaluation was conducted, the life care plan would need to be updated prior to trial to reflect the current circumstances of R.K. To calculate the costs, Mr. Forman used both the total offset method as well as the cancellation method,**

which are both reliable methodologies and which, in this case, produced similar results.[7]

iii. Usefulness To The Jury

Mr. Forman's analysis will be useful to the jury since it explains matters which are beyond the understanding and experience of the average lay person. Although the jury will need to resolve factual issues concerning what actually occurred at the Calhoun home, and the participation of each defendant, and will also be entitled to evaluate and discard the opinions upon which Mr. Forman relies in drafting the plan, his expertise will be useful in explaining the type of care and treatment which is available and appropriate based upon the Plaintiff's version of the facts, which may be accepted by the jury. In addition, the calculation of the cost of providing such treatment is beyond the knowledge of the average lay person, and his testimony is critical in this regard.

In sum, after reviewing the pleadings, reports, and deposition of Lawrence Forman, as well as the testimony at the evidentiary hearing, the undersigned finds that his opinions and report are sufficiently reliable, are based on factual support in the record, will be helpful to the jury, and, therefore, satisfy the requirements of Fed. R. Evid. 702. Therefore, his testimony is admissible at trial.

## IV. CONCLUSION

Therefore, based upon a review of the record as a whole, including the testimony at the evidentiary hearing, it is hereby

**ORDERED AND ADJUDGED** that Defendants' motions in limine to exclude the

[7] There was no challenge or contrary testimony presented at the evidentiary hearing regarding Mr. Forman's explanation of how he calculated the amounts presented in his cost summary, and therefore the undersigned accepts his testimony that this is a reliable and tested methodology. The challenge was directed to the need for particular services, rather than to the mathematical calculation.

**testimony of Dr. Boswell, Dr. Hines, and Mr. Forman (DE ## 818, 836) are DENIED.**

**DONE AND ORDERED in chambers at Miami, Florida, on July 12, 2007.**

**ANDREA M. SIMONTON**
**UNITED STATES MAGISTRATE JUDGE**

**Copies furnished to:**
**The Honorable Federico A. Moreno,**
**United States District Judge**
**All counsel of record**